Jonathan D. Miller (Bar No. 220848)
jonathan@nps-law.com
Holly C. Blackwell (Bar No. 224941)
holly@nps-law.com
NYE, PEABODY, STIRLING, HALE & MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, California 93101
Phone: (805) 963-2345
Fax: (805) 563-5385

Benjamin J. Sweet (*Pro Hac Pending*)
Edwin J. Kilpela Jr. (*Pro Hac Pending*)
200 First Avenue, Suite 300
Pittsburgh, Pennsylvania 15222
Phone: (412) 261-2393
Fax: (412) 261-2110

R. Bruce Carlson (*Pro Hac Pending*)
Stephanie Goldin (*Pro Hac Pending*)
Jamisen Etzel (*Pro Hac Pending*)
CARLSON LYNCH LTD
PNC Park
115 Federal Street, Suite 210
Pittsburgh, PA 15212
Phone: (412) 322-9243
Fax: (412) 231-0246

FILED
CLERK, U.S. DISTRICT COURT
DEC 20 2013
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

*Proposed Lead Counsel*

Attorneys for Plaintiffs, THOMAS FLOWERS, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### (WESTERN DIVISION)

THOMAS FLOWERS, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

SCHIFF NUTRITION, SCHIFF NUTIRITON INTERNATIONAL, INC., SCHIFF NUTRITION GROUP, INC., RECKITT BENCKISER PHARMACEUTICALS INC., and RECKITT BENCKISER NORTH AMERICA, LLC,

Defendants.

Case No. CV13-9406 MWF-MRWx

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

1
**CLASS ACTION COMPLAINT**

## CLASS ACTION COMPLAINT

1. Plaintiff Thomas Flowers, by and through his attorneys, brings this class action on behalf of himself and similarly-situated others who purchased health supplements containing glucosamine and/or chondroitin manufactured and marketed by Defendants Schiff Nutrition, Schiff Nutrition International, Inc., Schiff Nutrition Group, Inc., Reckitt Benckiser Pharmaceuticals Inc., and Reckitt Benckiser North America, LLC (collectively, "Schiff" or "Defendant") and sold under the brand name "Move Free", and states as follows:

## INTRODUCTION AND NATURE OF ACTION

2. Schiff is a manufacturer and marketer of supplements for humans and animals.

3. Schiff sells its products nationally in retail stores (including, for example, Costco, Walmart, Target and Rite Aid) and, online via its website. Schiff sells and ships a significant amount of products to residents of California.

4. Schiff markets, sells and distributes a line of joint health dietary supplements under the label "Move Free" (collectively referred to as the "Supplements").[1] According to the labels on these products, the purported active ingredients are, among others, glucosamine sulfate, chondroitin sulfate.

5. In its uniform, nationwide marketing of the Supplements, Schiff promises that they will help protect cartilage, stimulate cartilage production, improve joint comfort, and improve joint function. Schiff has promoted its products claiming that the Supplements contain both glucosamine and chondroitin, which it claims "help by lubricating, cushioning, strengthening, protecting and rebuilding joints."

6. While Schiff's claims regarding the improved joint function associated

---

[1] The Supplements include, but are not necessarily limited to 1) Move Free Advanced Triple Strength; and 2) Move Free Advanced Plus MSM.

2

## CLASS ACTION COMPLAINT

with the Supplements are directed at anyone seeking to alleviate joint pain or stiffness, they are particularly directed at people suffering from osteoarthritis. Indeed, the most common symptoms of osteoarthritis include joint pain and stiffness—the very symptoms the Supplements claim to remedy.[2]

7. Despite Schiff's claims regarding the benefits and efficacy of glucosamine and chondroitin, however, the bulk, if not all, of the reliable and published scientific studies demonstrate that Schiff's claims are false and misleading.

8. Most damning to Schiff's claims is a large scale study sponsored and conducted by the National Institute of Health ("NIH") called the Glucosamine/chondroitin Arthritis Intervention Trial ("GAIT"), which concluded, in a report published in the New England Journal of Medicine, that "[glucosamine and chondroitin], alone or in combination, was not efficacious...." Clegg, D., et al., Glucosamine, Chondroitin Sulfate, and the Two in Combination for Painful Knee Osteoarthritis, 354 New England J. of Med. 795, 806 (2006).[3]

9. Thus, in addition to affirmatively misrepresenting the joint health benefits of the Supplements, Schiff's failure to disclose facts regarding this and other similar studies also constitutes deception by omission or concealment. As a result, Defendants' joint health benefit representations and omissions are false, misleading and reasonably likely to deceive the public.

10. The misleading representations and omissions by Schiff are conveyed to the consuming public uniformly and through a variety of media including its website and online promotional materials and the labeling/packaging of the

---

[2] See http://www.webmd.com/osteoarthritis/guide/osteoarthritis-basics (noting that the symptoms of osteoarthritis include "joint aching and soreness," "pain," and "stiffness").
[3] The GAIT Study was conducted by the National Center for Complementary and Alternative Medicine, which, according to its website "is the Federal Government's lead agency for scientific research on the diverse medical and health care systems, practices, and products that are not generally considered part of conventional medicine."

supplements themselves. In short, Defendants' uniform advertising and marketing virtually ensure that the only reason a consumer would purchase the Supplements is to obtain the advertised joint health benefits—benefits that Schiff knows the Supplements fail to provide.

11. As a result of Defendants' deceptive joint health benefit representations, consumers – including Plaintiff and members of the proposed Class (defined herein) – have purchased products that do not perform as advertised.

12. Plaintiff brings this action on behalf of himself and all other similarly situated consumers in California to halt the dissemination of this false and misleading advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Supplements based on violations of California unfair competition laws and breach of express warranties. Plaintiff seeks injunctive and monetary relief for all consumers who purchased the Supplements.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and many members of the Class are citizens of a state different from Defendant. Plaintiff Flowers is a citizen of California, and Defendants are citizens of Delaware, the state of incorporation and New Jersey, the state where the principal place of business is located.

14. This Court has personal jurisdiction because Defendant is authorized to conduct and does conduct business in the State of California. Defendant has marketed, promoted, distributed and sold the Supplements in California and Defendant has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court

Nye, Peabody, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

permissible.

15. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district. Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District. Venue is further proper in this District pursuant to 28 U.S.C. §1391(b)(2) because Plaintiff Flowers and numerous Class Members reside in this District, were subjected to Defendant's misleading advertisements in this District, were induced through Defendant's advertisements to purchase the Supplements in this District, and sustained damages in this District.

## PARTIES

16. Plaintiff Thomas Flowers is a California citizen residing in Goleta, California. Plaintiff Flowers suffers from chronic joint pain in his fingers, hands, knees, elbows, and shoulders. Plaintiff Flower's ailments exist on a daily basis and have progressively worsened over time. In an effort to remediate such pain and discomfort and to improve his joint health, Plaintiff purchased Schiff brand Supplements on several occasions. In particular, during the Class Period Plaintiff Flowers repeatedly purchased Schiff brand Supplements at retail stores located in the Santa Barbara and Goleta area in reliance on Schiff's claims that the products would rebuild cartilage and provide joint health benefits. Plaintiff Flowers purchased Schiff brand Supplements to combat and prevent further cartilage damage and joint pain. Plaintiff Flowers paid approximately $20 per 120 tablet bottle of Move Free Advanced Plus MSM, and approximately $20 per 80 tablet bottle of Move Free Advanced Triple Strength. If Plaintiff Flowers was aware that Schiff had both misrepresented the benefits of the Supplements he would not have purchased Schiff brand Supplements. Plaintiff Flowers used Schiff brand Supplements as directed and did not receive any of the promised benefits. As a result, Plaintiff Flowers suffered an injury in fact and lost the money associated with

his purchase.

17. Defendant Schiff Nutrition is, on information and belief, a wholly-owned subsidiary of Reckitt Benckiser North America, LLC, a New Jersey company with its principal place of business at 399 Interpace Parkway; Parsippany, NJ 07054. At all relevant times, Schiff has advertised, marketed, provided, offered, distributed, and/or sold the Supplements throughout the United States including to individuals in California such as Plaintiff and the Class.

## ALLEGATIONS

### The False and Misleading Marketing Claims

18. This lawsuit concerns the products marketed and sold by Schiff including, but not limited to: 1) Move Free Advanced Triple Strength; and 2) Move Free Advanced Plus MSM (all listed and unlisted products referred to herein, collectively, as the "Supplements").[4] These products frequently come in a variety of dosages and sizes, so the total number of relevant products sold by Schiff may exceed those listed above.

19. Marketed as joint health dietary supplements, the Supplements purportedly relieve joint pain through the combination of their ingredients.

20. According to Defendant's website, the Supplements works as follows: Our original Triple Strength product was the first with the powerful Advantage of 4 – Uniflex to protect your joints, Joint Fluid to replenish your joints and Glucosamine and Chondroitin help to rebuild your joints.
See http://www.schiffvitamins.com/move-free-advanced-triple-strength-80-count (last accessed October 13, 2013).

21. The primary active ingredient in the Supplements is glucosamine hydrochloride. Glucosamine is an amino sugar that the body produces and distributes in cartilage and other connective tissue. The Supplements also contain

---

[4] Plaintiff reserves the right to include other products upon completion of discovery.

chondroitin sulfate. Chondroitin sulfate is a complex carbohydrate found in the body's connective tissues.

22. There is no competent scientific evidence that taking glucosamine hydrochloride chondroitin sulfate results in the body metabolizing it into something that provides the advertised joint health and cartilage benefits, including relieving the major symptoms of arthritis.

23. Contrary to the representations on all of the Supplements' packaging, Defendant does not possess (and has not possessed) competent scientific evidence that any of these ingredients, taken alone or in combination, are effective in providing the advertised joint health and cartilage benefits, including treating the major symptoms of arthritis or any joint related ailments.

24. According to Defendant's website and to the packaging/label, the Supplements state that "[g]lucosamine and [c]hondroitin help by lubricating, cushioning, strengthening, protecting and rebuilding joints."

25. In short, Schiff engages in a pervasive and widespread marketing campaign to drive sales of its product, luring consumers into purchasing the Supplements by making claims that the Supplements are efficacious in treading and remedying joint pain and discomfort.

**Multiple Clinical Studies Demonstrate That the Supplements Are Ineffective**

26. Schiff's representations about the efficacy of the ingredients in the Supplements products are totally contradicted by all credible scientific evidence. Indeed, since 2004, multiple clinical studies have found that glucosamine and chondroitin, alone or in combination, are not effective in providing the represented joint health benefits.

27. In 2004, one study concluded that glucosamine was no more effective than a placebo in treating the symptoms of knee osteoarthritis. McAlindon et al., Effectiveness of Glucosamine For Symptoms of Knee Osteoarthritis: Results From an Internet-Based Randomized Double-Blind Controlled Trial, 117(9) Am. J. Med.

649 (Nov. 2004).

28. Indeed, as early as 2004, other clinical studies indicated a significant "placebo" effect when patients consumed products they were told had the potential to cure joint aches and pains. For example, one 2004 study involved a six-month study of the effects of glucosamine compared with placebo and concluded that there was no difference in primary or secondary outcomes between the two. Cibere et al., Randomized, Double-Blind, Placebo-Controlled Glucosamine Discontinuation Trial In Knee Osteoarthritis, 51(5) Arthritis Care & Research 738-45 (Oct. 15, 2004). The authors concluded that the study provided no evidence of symptomatic benefit from continued use of glucosamine and that perceived benefits were, in fact, due to the placebo effect and not any real benefit provided by glucosamine. Id.

29. In 2006, the first GAIT study concluded that "[t]he analysis of the primary outcome measure did not show that either supplement, alone or in combination, was efficacious." 2006 GAIT Study at 806. Subsequent GAIT studies in 2008 and 2010 reported that glucosamine and chondroitin did not rebuild cartilage[5] and were otherwise ineffective – even in patients with moderate to severe knee pain for which the 2006 GAIT study reported results were inconclusive. See Sawitzke, A.D., et al., The Effect of Glucosamine and/or Chondroitin Sulfate on the Progression of Knee Osteoarthritis: A GAIT Report, 58(10) J. Arthritis Rheum. 3183–91 (Oct. 2008); Sawitzke, A.D., Clinical Efficacy And Safety Of Glucosamine, Chondroitin Sulphate, Their Combination, Celecoxib Or Placebo Taken To Treat Osteoarthritis Of The Knee: 2-Year Results From GAIT, 69(8) Ann Rhem. Dis. 1459-64 (Aug. 2010).

30. The GAIT studies are consistent with the reported results of other

---

[5] To a similar effect, a study by Kwok, et al., entitled *The Joints On Glucosamine (JOG) Study: A Randomized, Double-Blind, Placebo-Controlled Trial To Assess The Structural Benefit Of Glucosamine In Knee Osteoarthritis Based On 3T MRI*, 60 Arthritis Rheum 725 (2009), concluded that glucosamine was not effective in preventing the worsening of cartilage damage.

studies that have demonstrated the ineffectiveness of both glucosamine and chondroitin.

31. In 2008, a study concluded that glucosamine was no better than a placebo in reducing either the symptoms or progression of hip osteoarthritis. Rozendaal et al., Effect of Glucosamine Sulfate on Hip Osteoarthritis, 148 Ann. of Intern. Med. 268-77 (2008).

32. A 2010 a meta-analysis examined prior studies involving glucosamine and chondroitin, alone or in combination, and reported that the collection of studies supported a conclusion that those compounds neither reduced joint pain nor had an impact on the narrowing of joint space. Wandel et al., Effects of Glucosamine, Chondroitin, Or Placebo In Patients With Osteoarthritis Or Hip Or Knee: Network Meta-Analysis, BMJ 341:c4675 (2010).

33. Another 2010 study concluded that there was no difference between placebo and glucosamine for the treatment of low back pain and lumbar osteoarthritis and that there was no data recommending the use of glucosamine. Wilkens et al., Effect of Glucosamine on Pain-Related Disability in Patients With Chronic Low Back Pain and Degenerative Lumbar Osteoarthritis, 304(1) JAMA 45-52 (July 7, 2010).

34. In 2011, a summary article reviewed the available literature and concluded that "[t]he cost-effectiveness of these dietary supplements alone or in combination in the treatment of OA has not been demonstrated in North America." Miller, K. and Clegg, D., Glucosamine and Chondroitin Sulfate, Rheum. Dis. Clin. N. Am. 37 (2011) 103-118.

35. Most recently, a meta-analysis synthesized all available studies evaluating the efficacy of glucosamine for treating osteoarthritis and concluded that glucosamine showed no pain reduction benefits for osteoarthritis. Wu D. et al., Efficacies of different preparations of glucosamine for the treatment of

osteoarthritis: a meta-analysis of randomised, double-blind, placebo-controlled trials, 67(6) Int. J. Clin. Pract. 585-94 (June 2013).

36. Scientific studies have also shown that the other ingredients in the Supplements are similarly ineffective. See, e.g., S. Brien, et. al., Systematic Review Of The Nutritional Supplements (DMSO) And Methylsulfonylmethane (MSM) In The Treatment Of Osteoarthritis, 16 Osteoarthritis and Cartilage, 1277 (Nov. 2008); Usha PR and Naidu MU, Randomised, Double-Blind, Parallel, Placebo-Controlled Study of Oral Glucosamine, Methylsulfonylmethane and their Combination in Osteoarthritis, 24 Clinical Drug Investigation 353-63 (2004); see also Biegert C et al., Efficacy and Safety of Willow Bark Extract in the Treatment of Osteoarthritis and Rheumatoid Arthritis: Results of 2 Randomized Double-Blind Controlled Trials, Journal of Rheumatology 31.11 (2004): 2121-30 (no efficacy for willow bark as compared with placebo and willow bark less effective than low dosages of non-steroidal anti-inflammatory); see also Abdel-Tawb, M., et al., Boswellia Serrata: An Overall Assessment Of In Vitro, Preclinical, Pharmacokinetic And Clinical Data, 50 Clin Pharmacokinet. 349-69 (2011).

37. Doctor's Best's claims that the Supplements Products "stimulate" cartilage are also totally belied by the available scientific evidence:

38. In October 2008, the GAIT Study also concluded that glucosamine and/or chondroitin, alone or in combination, did not demonstrate a clinically important difference in joint space loss, indicating that they were ineffective in rebuilding or regenerating cartilage. Sawitzke et al., The Effect of Glucosamine and/or Chondroitin Sulfate on the Progression of Knee Osteoarthrits, A Report from the Glucosamine/Chondroitin Arthritis Intervention Trial, 58 Arthritis Rheum. 3183-3191 (2008).

39. In April 2009, the Journal of Orthopaedic Surgery published an article that concluded that there was scant evidence to support a clam that glucosamine was

1  superior to placebo in even arresting the deterioration of cartilage, to say nothing of
2  arresting that process and promoting regeneration or rebuilding.  Kirkham, et al.,
3  Review Article: Glucosamine, 17(1) Journal of Orthopaedic Surgery 72-6 (2009).

**Schiff Harms Consumers By Continuing To Market And Sell the Supplements**

40. Undeterred by the weight of scientific evidence demonstrating that the ingredients in the Supplements are wholly ineffective, Schiff conveyed and continues to convey one uniform message: the Supplements maintain joints and promote growth of cartilage.

41. As the manufacturer and/or distributor of the Supplements, Schiff possesses specialized knowledge regarding the efficacy of the ingredients contained in its products and, moreover, is in a superior position to, and has, learned of the lack of efficacy for all of the key ingredients in the Supplements.

42. Specifically, Schiff knew, but failed to disclose, that the Supplements do not provide the joint health benefits represented and that well-conducted, clinical studies have found the ingredients in the Supplements to be ineffective in providing the joint health benefits represented by Schiff.

43. Plaintiff and Class members have been and will continue to be deceived or misled by Defendant's deceptive joint health benefit representations.  Plaintiff purchased and consumed one of the Supplements during the Class Period and in doing so, read and considered the advertising and marketing by Schiff and based his decision to purchase the Supplements on the joint health benefit representations on the packaging and on Defendant's website.  Schiff's joint health benefit representations and omissions were a material factor in influencing Plaintiff's decision to purchase and consume the product he purchased.

44. Other than obtaining the benefits that the Supplements promise but do not deliver, there is no other reason for Plaintiff and the Class to have purchased the Supplements as the Supplements are not represented to provide any other benefits and Plaintiff and the Class would not have purchased the Supplements had they

11
**CLASS ACTION COMPLAINT**

known Schiff's joint health benefit statements were false and misleading and that clinical cause and effect studies have found the ingredients to be ineffective for the represented joint health benefits.

45. As a result, Plaintiff and the Class members have been injured in fact in their purchases of the Supplements in that they were deceived into purchasing Products that do not perform as advertised.

46. Schiff, by contrast, reaped enormous profit from its false marketing and sale of the Supplements.

## CLASS DEFINITION AND ALLEGATIONS

47. Plaintiff Thomas Flowers brings this action on behalf of himself and all other similarly situated persons pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

> All consumers who, within the applicable Class Period, purchased the Supplements within the State of California.
>
> Excluded from the Class are Schiff, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Supplements for resale.

48. Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or further division into subclasses or limitation to particular issues after discovery.

49. The Class satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Federal Rule of Civil Procedure 23(a) and (b)(3).

50. The members of the Class are so numerous that joinder of all members is impracticable. Although the precise number of Class members in unknown to Plaintiff at this time and can be determined only by appropriate discovery, it is reasonably estimated that the Class consists of thousands of purchasers of the Supplements who have been damaged by Schiff's conduct as alleged herein.

51. Because Plaintiff is a purchaser of the Supplements who has been

subjected to Defendant's deceptive and misleading course of conduct, intent to trick, mislead, and significantly confuse consumers, Plaintiff is a member of the Class, and his claims are typical of the claims of the members of the Class. The harm suffered by Plaintiff and all other Class members was and is caused by the same misconduct by Defendant.

52. Plaintiffs will fairly and adequately represent and protect the interests of the Class, in that Plaintiff has no interest antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel, who are experienced in consumer and commercial class action litigation, to further ensure such protection and who intend to prosecute this action vigorously.

53. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it impossible for individual Class members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims was not available, Defendant would likely continue its wrongful conduct, would unjustly retain improperly obtained revenues, or would otherwise escape liability for its wrongdoing as asserted herein.

54. Common questions of law and fact exist as to all members of the Class, which predominate over any questions that may affect individual Class members. Among the questions of law and fact common to the Class are the following:

1. Whether Defendant violated California Business and Professions Code 17500, et seq.;

2. Whether Defendant violated California Business and Professions Code 17200, et seq.;

3. Whether Defendant breached the implied covenant of good faith and fair dealing in its sales transactions with Plaintiffs and the Class Members; and

4. The appropriate measure of damages or other relief to which Plaintiffs and the Class members are entitled.

55. Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a Class action.

56. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for the Defendant. Prosecution as a class action will eliminate the possibility of repetitious litigation.

57. Unless a Class is certified, Schiff will retain monies received as a result of its conduct that were taken from Plaintiff and Class members. Unless a Class-wide injunction is issued, Schiff will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived.

58. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

### FIRST CAUSE OF ACTION
### (California False Advertising Law
### - Cal. Bus. & Prof. Code § 17500, Et Seq.)

59. Plaintiff Flowers incorporates by reference and reasserts each allegation contained in the preceding paragraphs and further alleges as follows:

60. Defendant engaged in unlawful conduct under California Business & Professions Code § 17500, et seq., by claiming that the Supplements "help rebuild cartilage & lubricate joints." Plaintiff Flowers and the Class members reasonably relied upon Defendant's representations and/or omissions made in violation of California Business & Professions Code § 17500, et seq.

61. As a direct and proximate result of Defendant's violations, Plaintiff Flowers and the Class members would not have otherwise purchased the Supplements and, therefore, suffered injury in fact and lost money.

62. Plaintiff Flowers is informed and believes that as a further direct and proximate result of the marketing described above, Defendant has received from

14
**CLASS ACTION COMPLAINT**

members of the Class, money obtained through its violation of California Business & Professions Code § 17500, et seq., which Defendant continues to hold for its sole benefit.

63. Accordingly, Plaintiff, on behalf of himself and all others similarly situated, seek equitable relief in the form of an order requiring Defendant to refund to Plaintiff, and the Class all monies they paid for the Supplements above and, in addition, an order requiring Defendant to cease claiming that the Supplements "help rebuild cartilage & lubricate joints."

## SECOND CAUSE OF ACTION
### (California Unfair Competition Law – Cal. Bus. & Prof. Code § 17200, et seq.)

64. Plaintiff Flowers incorporates by reference and reasserts each allegation contained in the preceding paragraphs and further alleges as follows:

65. Defendant engaged in unlawful conduct under California Business & Professions Code § 17200, et seq., by falsely claiming that the Supplements "help rebuild cartilage and lubricate joints."

66. Defendant's conduct is unlawful in that it violates the False Advertising Law, California Business & Professions Code § 17500, et seq.

67. Defendant's conduct is unfair in that it offends established public policy or is immoral, unethical, oppressive, unscrupulous, unconscionable, or substantially injurious to Plaintiff Flowers and the Class. The harm to Plaintiff Flowers and the Class members arising from Defendant's conduct outweighs any legitimate benefit Defendant has derived from the conduct.

68. Defendant's misrepresentations and omissions are likely to mislead a reasonable consumer.

69. Plaintiff Flowers and members of the Class relied on Defendant's misrepresentations and omissions.

70. As a direct and proximate result of Defendant's violations, Plaintiff Flowers and members of the Class would not have otherwise purchased the

Supplements, or would have paid less, and therefore, suffered injury in fact and lost money.

71. Plaintiff Flowers and the Class members, seek reimbursement of monies they paid for the Supplements. Additionally, Plaintiff Flowers and the Class members seek equitable and injunctive relief on behalf of themselves and the Class members pursuant to Cal. Business & Professions Code § 17203.

## THIRD CAUSE OF ACTION
### (Unjust Enrichment on behalf of the Class)

72. Plaintiff incorporates by reference and reasserts each allegation contained in the preceding paragraphs and further alleges as follows:

73. Plaintiff's cause of action for unjust enrichment is pled in the alternative to other causes of action asserted herein.

74. As a result of Defendant's misconduct in the form of deceptive marketing of the Supplements as set forth above, Defendant has received a benefit at the expense of Plaintiff and the Class members that would be unjust for Defendant to retain.

75. As a result of Defendant's unjust enrichment, Plaintiff and the Class Members are entitled to the return of the financial unjust benefit conferred by Plaintiff and Class members on Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, requests the following relief:

    A.    An order that this action may be maintained as a Class Action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff be appointed Class representatives for the Class, and that Plaintiff's counsel be appointed as counsel for the Class;

    B.    A permanent injunction against Defendant, restraining, preventing and enjoining Defendant from engaging in the illegal practices alleged;

    C.    An order requiring Defendant to disgorge the profits wrongfully obtained through the use of its illegal practices;

D. Actual damages;

E. An award of attorneys' fees;

F. An award of the costs of suit reasonably incurred by Plaintiff and his counsel;

G. An award of interest, including prejudgment interest, at the legal rate, and;

H. Such other and further relief as the Court deems necessary and appropriate.

DATED: December 20, 2013.

Respectfully submitted,

By: _____
Jonathan D. Miller
Jennifer M. Miller
**NYE, PEABODY, STIRLING, HALE, & MILLER, LLP**

By: _____/s/_____

Benjamin J. Sweet (*Pro Hac Pending*)
Edwin J. Kilpela, Jr (*Pro Hac Pending*)
**DEL SOLE CAVANAUGH STROYD LLC**

By: _____/s/_____

R. Bruce Carlson (*Pro Hac Pending*)
Stephanie Goldin (*Pro Hac Pending*)
Jamisen Etzel (*Pro Hac Pending*)
**CARLSON LYNCH LTD**
PNC Park

*Proposed Lead Counsel*
*Attorneys for Plaintiff* THOMAS FLOWERS, on behalf of himself and all others similarly situated,

17
**CLASS ACTION COMPLAINT**

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of his claims by jury to the extent authorized by law.

DATED: December 20, 2013.

Respectfully submitted,

By: _____

Jonathan D. Miller
Jennifer M. Miller
**NYE, PEABODY, STIRLING, HALE, & MILLER, LLP**

By:_____/s/_____

Benjamin J. Sweet (*Pro Hac Pending*)
Edwin J. Kilpela, Jr (*Pro Hac Pending*)
**DEL SOLE CAVANAUGH STROYD LLC**

By:_____/s/_____

R. Bruce Carlson (*Pro Hac Pending*)
Stephanie Goldin (*Pro Hac Pending*)
Jamisen Etzel (*Pro Hac Pending*)
CARLSON LYNCH LTD
PNC Park

***Proposed Lead Counsel***
*Attorneys for Plaintiff* THOMAS FLOWERS, on behalf of himself and all others similarly situated,